IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MEHUL RAMESH KHATIWALA, | No. 4:23-CV-00327 |
| Petitioner, | (Chief Judge Brann) |
| v. | |
| ERIK RICKARD, | |
| Respondent. | |

MEMORANDUM OPINION

SEPTEMBER 20, 2023

Petitioner Mehul Ramesh Khatiwala filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 while confined at the United States Penitentiary in Lewisburg, Pennsylvania (USP Lewisburg). He asserts that he was wrongly convicted of a disciplinary infraction, resulting in the loss of good-conduct time and other privileges. He additionally claims that his earned time credits under the First Step Act (FSA) were improperly calculated. For the following reasons, the Court must deny Khatiwala's Section 2241 petition.

I.  BACKGROUND

Khatiwala is serving a 63-month sentence for bank fraud and conspiracy to commit bank fraud imposed by the United States District Court for the District of Maryland.[1] On April 27, 2022, while incarcerated at the Federal Correctional

---

[1]  Doc. 7-1 at 1 ¶ 3; *id.* at 4.

Institution in Cumberland, Maryland, Khatiwala's cell was searched and he was found to be in possession of a pack of tinfoil that was reported missing from the staff kitchen.[2] He was charged with Offense Code 226 (Possessing Stolen Property).[3]

During the April 29, 2022 Unit Discipline Committee hearing that followed the filing of the incident report, Khatiwala claimed that he "had this tin foil for weeks" and that he had "asked a kitchen worker for it."[4] The Committee referred the matter to a Discipline Hearing Officer (DHO), who held a formal hearing on the charge on May 27, 2022.[5]

Following the hearing, the DHO found that Khatiwala had committed the prohibited act, citing the incident report, witness statements, and Khatiwala's own statements.[6] As a sanction, the DHO imposed disallowance of 27 days' good-conduct time and loss of commissary privileges for 90 days.[7]

Khatiwala appealed the DHO's decision by filing Remedy 1130327 with the Regional Director on August 10, 2022.[8] That filing was rejected for failing to submit the proper number of continuation pages.[9] Khatiwala refiled Remedy

---

[2] *Id.* at 16.
[3] *Id.*
[4] *Id.* at 17.
[5] *Id.* at 21.
[6] *Id.* at 23-24.
[7] *Id.* at 24.
[8] *Id.* at 2 ¶ 6.
[9] *Id.*

1130327 on September 9, 2022, but he filed it in the wrong region and it was rejected due to this procedural misstep.[10] He then refiled the remedy in the proper region (the "Northeast Region"), but it was again rejected because it was illegible and because it did not include the proper number of continuation pages.[11] Instead of curing the noted deficiencies and refiling, Khatiwala appealed to the BOP's General Counsel or "Central Office" (the final level of appeal), but that appeal was rejected for failing to properly file at the Regional Office in the first instance.[12]

Khatiwala filed one administrative remedy related to FSA time credits.[13] He filed Remedy 1138854 on October 27, 2022, but it was rejected at the first level as illegible.[14] He was instructed to refile a legible copy, but he never did.[15]

Khatiwala lodged the instant Section 2241 petition in this Court on February 18, 2023.[16] In it, he raises a due process challenge to his disciplinary proceedings and he disputes the BOP's calculation of his FSA earned time credits.[17]

---

[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.* at 2 ¶ 7.
[14] *Id.*
[15] *Id.*
[16] *See* Doc. 1 at 4.
[17] Khatiwala also appears to assert an Eighth Amendment claim based on his multiple stints in the Special Housing Unit. *See* Doc. 1 at 1-3 ¶¶ 9-15, 33-36. However, this type of claim is not cognizable in a habeas petition, as Khatiwala is not seeking immediate release based on his conditions of confinement. *See Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 323-25 (3d Cir. 2020) (explaining that detainees challenging unconstitutional conditions of confinement and seeking "release from detention" may proceed by way of a habeas petition, but only in "extraordinary circumstances"). Even if he were, being housed for several months in the SHU does not rise to the level of "extraordinary circumstances" that would implicate habeas relief.

## II. DISCUSSION

Respondent asserts that Khatiwala's petition must be dismissed because he failed to exhaust administrative remedies. Respondent additionally argues that Khatiwala's claims fail on the merits. The Court will take these arguments in turn.

### A. Administrative Exhaustion

Although there is no explicit statutory exhaustion requirement for Section 2241 habeas petitions, the United States Court of Appeals for the Third Circuit has consistently held that exhaustion applies to such claims.[18] Exhaustion allows the relevant agency to develop a factual record and apply its expertise, conserves judicial resources, and provides agencies the opportunity to "correct their own errors" thereby fostering "administrative autonomy."[19]

The BOP has a specific internal system through which federal prisoners can request review of nearly any aspect of their imprisonment.[20] That process begins with an informal request to staff and progresses to formal review by the warden, appeal with the Regional Director, and—ultimately—final appeal to the General Counsel.[21] In challenges to disciplinary proceedings before a DHO, the normal administrative process is modified slightly, and only requires an inmate to appeal

---

[18] *See Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000) (citing *Schandelmeier v. Cunningham*, 819 F.2d 52, 53 (3d Cir. 1986); *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996)).
[19] *Moscato*, 98 F.3d at 761-62 (citations omitted).
[20] *See generally* 28 C.F.R. §§ 542.10-.19.
[21] *See id.* §§ 542.13-.15.

4

the DHO's decision to the Regional Director and then to final review with the General Counsel.[22]

Exhaustion is the rule in most cases, and failure to exhaust will generally preclude federal habeas review.[23] Only in rare circumstances is exhaustion of administrative remedies not required. For example, exhaustion is unnecessary if the issue presented is one that involves only statutory construction.[24] Exhaustion is likewise excused when it would be futile.[25] "In order to invoke the futility exception to exhaustion, a party must 'provide a clear and positive showing' of futility before the District Court."[26]

Khatiwala argues that, since he appealed his disciplinary proceedings to the General Counsel (or Central Office), he fully exhausted his administrative remedies. Khatiwala is incorrect. Remedy 1130327 (regarding the disciplinary infraction) was rejected multiple times for procedural defects and was never addressed on the merits.[27] Khatiwala never properly filed his remedy in the first instance with the Regional Director. Thus, Khatiwala failed to properly exhaust

---

[22] *See id.* §§ 542.14(d)(2), 542.15.
[23] *See Moscato*, 98 F.3d at 761.
[24] *See Vasquez v. Strada*, 684 F.3d 431, 433-34 (3d Cir. 2012) (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981)).
[25] *Rose v. Lundy*, 455 U.S. 509, 516 n.7 (1982); *see Cottillion v. United Refining Co.*, 781 F.3d 47, 54 (3d Cir. 2015) (affirming, in ERISA context, futility exception to exhaustion requirement).
[26] *Wilson v. MVM, Inc.*, 475 F.3d 166, 175 (3d Cir. 2007) (quoting *D'Amico v. CBS Corp.*, 297 F.3d 287, 293 (3d Cir. 2002)).
[27] *See, e.g.*, Doc. 1-5 at 2, 4.

his administrative remedies and procedurally defaulted on this claim because the time to appeal the DHO's decision has long since passed.[28] Khatiwala has not established cause and prejudice to excuse this default, so judicial review of that claim is barred.[29]

The same reasoning applies to his claim that his FSA earned time credits were calculated incorrectly. Khatiwala's only remedy filed regarding FSA credits was rejected for procedural defects at the first level and was never rectified or appealed. Thus, that claim is likely barred from review as well.[30] Moreover, Khatiwala's failure to even attempt to bring his FSA credit-calculation issues to the BOP's attention to ascertain the BOP's position regarding his claim deprives this Court of a properly developed record for review.[31]

### B.   Due Process Challenge to Disciplinary Proceedings

Even if Khatiwala had properly exhausted his due process claim, the Court observes that it is likely meritless. Inmates retain certain procedural due process

---

[28] *See Moscato*, 98 F.3d at 760; *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (explaining that administrative exhaustion requires "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)'" (citation omitted)).

[29] *See Moscato*, 98 F.3d at 761-62.

[30] *See id.*

[31] *See Donnelly v. Fed. Bureau of Prisons*, No. 10-cv-3105, 2012 WL 2357511, at *4-5 (D. Minn. May 30, 2012) (noting that one of the primary purposes of exhaustion is to develop the relevant factual and legal issues, as "[t]he administrative remedies process hones the factual record, and brings clarity to the legal issues presented in the case," and concluding that the purported challenge to a BOP policy "should have been fine-tuned and vetted before being brought into federal court"), *report & recommendation adopted*, 2012 WL 2357490 (D. Minn. June 20, 2012).

6

rights in prison disciplinary proceedings, although these rights "may be curtailed by the demands and realities of the prison environment."[32]  *Wolff v. McDonnell* enumerates those protections and requires, at minimum, (1) the right to appear before an impartial decision-making body; (2) written notice of the charge(s) at least 24 hours in advance of the disciplinary hearing; (3) an opportunity to call witnesses and present documentary evidence (so long as the presentation of such evidence is not "unduly hazardous to institutional safety or correctional goals"); (4) if the inmate is illiterate or complex issues are involved, assistance from another inmate or a staff member; and (5) a written decision by the factfinder setting forth the evidence relied on and the reasons for the disciplinary action.[33]

When an inmate challenges the sufficiency of the evidence in a prison disciplinary proceeding that resulted in the loss of good-conduct time, "the requirements of due process are satisfied if *some evidence* supports the decision" to revoke good-time credits.[34]  Determining whether this standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence."[35]  Rather, the relevant inquiry for the court is whether there is "any evidence in the record that could

---

[32]  *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991) (citing *Wolff v. McDonnell*, 418 U.S. 539, 555-56 (1974)).
[33]  *Wolff*, 418 U.S. at 563-70 (citations omitted).
[34]  *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985) (emphasis added).
[35]  *Id.*

support the conclusion" reached by the decisionmaker.[36]

Khatiwala's Section 2241 petition is unclear regarding his due process challenge. His single argument seems to be that he was sanctioned "for unsubstantiated allegations."[37] This appears to be a challenge to the sufficiency of the evidence. However, review of the record plainly establishes that there was "some evidence" for the DHO to conclude that Khatiwala committed the charged offense, including the recovery of the tinfoil in Khatiwala's cell, the incident report, witness statements, and Khatiwala's own statements. Accordingly, even if the Court were to reach the merits of this due process challenge, it would fail.

### C.   FSA Time Credits Challenge

Khatiwala's FSA time credits claim also fails on the merits. Assuming that he can circumvent administrative exhaustion by asserting that his claim deals only with statutory construction, his challenge is meritless.

Khatiwala's argument centers on the accrual of FSA time credits and the proper interpretation of 18 U.S.C. § 3632(d)(4)(A).[38] Under Section 3632(d)(4)(A), eligible prisoners can earn either 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction (EBRR)

---

[36] *Id.* at 455-56; *see also Denny v. Schultz*, 708 F.3d 140, 144 (3d Cir. 2013) ("[T]he 'some evidence' standard is a standard of appellate review to be applied by the district court rather than a burden of proof in a prison disciplinary proceeding." (citation omitted)).

[37] Doc. 1 at 3.

[38] Although Khatiwala focuses on the relevant BOP regulations, the Court looks first to the statute itself, as it must. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984).

programming or productive activities (PAs),[39] or—if they meet other specific qualifications—can earn an additional 5 days (for a total of 15 days) of time credits for every 30 days of successful participation in EBRR programming or PAs.[40]

Khatiwala's claim involves the timing for accrual of 15 days of time credits under Section 3632(d)(4)(A)(ii). That provision provides:

> A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.[41]

Khatiwala argues that the second requirement ("who, over 2 consecutive assessments, has not increased their risk of recidivism") is not a precondition to begin earning 15 days of time credits instead of 10. Rather, he contends, so long as a "minimum" or "low" risk prisoner is participating in EBRR programming or PAs, they should be earning 15 days of time credits unless they increase their risk of recidivism as determined by the referenced assessments.[42]

Khatiwala thus maintains that, since he has been a "minimum" risk of recidivism from the outset of his incarceration, he should not have had to wait until he underwent two consecutive risk-level assessments to begin earning 15 days of time credits, but rather should have been accruing 15 days since the start of his

---

[39] 18 U.S.C. § 3632(d)(4)(A)(i).
[40] 18 U.S.C. § 3632(d)(4)(A)(ii).
[41] *Id.*
[42] *See* Doc. 1 at 4 ¶¶ 41-45.

FSA programming.[43]  Respondent does not address Khatiwala's interpretation argument, but instead simply asserts that the two consecutive assessments at a "low" or "minimum" risk level are a condition precedent to earning 15 days of time credits and thus Khatiwala's credits were calculated correctly.[44]

The Court finds that the plain language of the statute indicates that there are two prerequisites to begin earning 15 days, rather than 10 days, of time credits per 30 days of successful FSA programming.  The prisoner must: (1) be determined by the BOP to be at a "minimum" or "low" risk for recidivating, and (2) must not have increased their risk of recidivism "over 2 consecutive assessments."[45]  Only then can an eligible prisoner "earn" time credits at a rate of 15 days of credit for every 30 days of successful programming.[46]

The use of the transitive verb "earn," in particular, demonstrates that two preconditions must be satisfied before a prisoner can begin to accrue time credits at a rate of 15 credits per 30 days of successful programming.  The statute does not say "shall be credited with," or "shall receive," or any other phrasing that would imply immediate or retroactive application of time credits at a rate of 15 credits per 30 days (as Khatiwala contends).  Rather, only when a prisoner obtains a "minimum" or "low" risk *and* has not increased their recidivism risk over two

---

[43] *Id.* ¶¶ 46-47.
[44] *See* Doc. 7 at 16.
[45] 18 U.S.C. § 3632(d)(4)(A)(ii).
[46] *Id.*

consecutive assessments can they begin to *earn* time credits at a rate of 15 credits per 30 days of successful programming. As other courts have noted, the language "reflects an interest in providing greater incentive for ongoing participation in [EBRR programming or PAs] for individuals who demonstrate, over time, that they remain unlikely to recidivate."[47]

The Court further observes that this interpretation matches that of the relevant agency, so even if there were ambiguity in the statute, the agency's interpretation is not unreasonable or impermissible.[48] Section 523.42(c) provides:

> (c) Amount of FSA Time Credits that may be earned.
>
> (1) For every thirty-day period that an eligible inmate has successfully participated in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment, that inmate will earn ten days of FSA Time Credits.
>
> (2) For every thirty-day period that an eligible inmate has successfully participated in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment, that inmate will earn an additional five days of FSA Time Credits *if the inmate*:
>
> > (i) Is determined by the Bureau to be at a minimum or low risk for recidivating; *and*
> >
> > (ii) Has maintained a consistent minimum or low risk of recidivism over the most recent two consecutive risk and needs assessments conducted by the Bureau.[49]

---

[47] *Laksonen v. Eischen*, No. 22:cv-2868, 2023 WL 3072434, at *3 (D. Minn. Apr. 25, 2023).
[48] *See Chevron*, 467 U.S. at 842-45 & n.11.
[49] 28 C.F.R. § 523.42(c) (emphasis supplied).

Here, the relevant regulation clearly interprets a prisoner's ability to earn 15 days of time credits per 30 days of successful programming as first requiring two conditions to be met. This is not an unreasonable interpretation of 18 U.S.C. § 3632(d)(4)(A)(ii).

Finally, other courts to consider this issue have similarly determined that maintaining a minimum or low recidivism risk over 2 consecutive assessments is a "triggering event" for earning an additional 5 days of FSA time credits.[50] In other words, only when a prisoner has met those two qualifications can they begin earning time credits at a rate of 15 days of credits per 30 days of successful programming. Before that triggering event, Section 3632(d)(4)(A)(i) controls the rate of an inmate's time credit accrual. Thus, because Khatiwala's interpretation is contrary to the plain language of the statute and the relevant regulation, his FSA claim must be denied.

### III.  CONCLUSION

For the foregoing reasons, the Court must deny Khatiwala's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[50] *See, e.g., Lallave v. Spaulding*, No. 3:22-cv-1705, 2023 WL 5732702, at *2 (M.D. Pa. Aug. 9, 2023) (Mannion, J.); *Laksonen*, No. 22:cv-2868, 2023 WL 3072434, at *3.